**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

COLUMBIA ARTISTS MUSIC LLC

                                        Plaintiff,

                    -against-

CHAD LAWSON, CHAD LAWSON MUSIC, LLC

                                        Defendants.

CV: 25-6049

**COMPLAINT**

Plaintiff Columbia Artists Music LLC ("Plaintiff" or "CAMI"), through its undersigned counsel, brings this Complaint against Defendants Chad Lawson and Chad Lawson Music, LLC (collectively, "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for breach of contract and for a declaratory judgment pursuant to the United States Declaratory Judgement Act, 28 U.S.C. § 2201. CAMI provides management services for performing artists, including but not limited to, booking and scheduling performances, negotiating agreements, and providing advice and counsel for career development. Defendant Chad Lawson is a neo-classical pianist and composer.

2.      CAMI and Defendants entered into an oral agreement in October 2022 designating CAMI as Chad Lawson's sole worldwide manager (hereinafter the "Worldwide Management Agreement"). Pursuant to the Worldwide Management Agreement, Defendants agreed that CAMI

would be paid 20% of revenues received by Defendants from engagements or contracts secured by CAMI during the term of the Worldwide Management Agreement.

3.      The parties further agreed that the Worldwide Management Agreement could be terminated at any time by either CAMI or Defendants. In the event of termination, Defendants agreed to pay CAMI 20% of any royalties earned by Defendants prior to termination of the Worldwide Management Agreement from albums released while under management by CAMI. The parties further agreed that in the event of termination, CAMI would receive 20% of all fixed recording funds or other advances to be received by Defendants pursuant to any contracts or contract amendments negotiated and secured by CAMI during the term of the Worldwide Management Agreement.

4.      Such post-termination provisions were consistent with industry custom and practice.

5.      Defendants terminated the Worldwide Management Agreement on or about February 10, 2025, but have refused to pay CAMI in accordance with the terms of the Worldwide Management Agreement.

6.      Defendants breached the Worldwide Management Agreement by, among other things, refusing to pay CAMI $39,728.29 in connection with Defendants' receipt of royalties in the amount of $198,641.00 for the album "Where We Are" which was released during the term of CAMI's management, prior to termination of the agreement.

7.       Defendants are also disputing that, under the terms of the Worldwide Management Agreement, Defendants are obligated to pay CAMI 20% of fixed payments to be received by Defendants in connection with an Exclusive Recording Agreement negotiated and secured by CAMI with Universal Music Group ("UMG"). CAMI's share of such payments would be no less

than $185,000.00 and was fixed and earned by CAMI prior to termination of the Worldwide Management Agreement.

8.      As further set forth below, Defendants' refusal to recognize CAMI's right to sums it earned in connection with the Worldwide Management Agreement has created a present, genuine, and justiciable controversy between CAMI and Defendants which warrants declaratory and other relief.

## THE PARTIES

9.      Plaintiff Columbia Artists Music LLC is a New York Limited Liability Company with its principal place of business at 880 Third Avenue, 5th Floor, New York, NY.

10.      Defendant Chad Lawson ("Lawson") is an individual residing at 624 E. Victory Dr., Savannah GA 31405.

11.      Defendant Chad Lawson Music, LLC is a Georgia domestic limited liability company.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.      The Court has personal jurisdiction over Defendants because their business offices are located at 515 Madison Avenue, Suite 1910, New York, NY and they conduct substantial business in this jurisdiction.

14.     Venue is proper because Plaintiff resides in this District and a substantial part of the events giving rise to the claims occurred here.

## FACTUAL BACKGROUND

### The Appearance Agreement with Lawson

15.     In August 2021 Defendants entered into an oral agreement with CAMI, appointing CAMI as Chad Lawson's North American representative for booking performances in North America. Pursuant to the oral agreement, CAMI, among other things, arranged and contracted tour dates and in return received 20% of all remuneration received by Chad Lawson, excluding reimbursement of expenses. Theresa Vibberts, ("Vibberts") then an Executive Vice President of CAMI, was the principal CAMI Music employee responsible for booking the performances on behalf of Defendants.

16.     The parties performed the oral appearance agreement for over a year, during which time CAMI received 20% from all performances it booked pursuant to contracts secured and negotiated by Vibberts.

### The Worldwide Management Agreement

17.     Because the role of arranging for North American appearances was relatively limited in terms of touring activity and profitability for CAMI, the parties agreed in October 2022 that CAMI would become Chad Lawson's Worldwide Manager, and assume responsibility for all aspects of his career including, among other things, booking and contracting tour dates, negotiating record contracts, arranging   public appearances, hiring and interfacing with publicists, and coordinating with Lawson's record label regarding all matters including marketing.

18.     Pursuant to the Worldwide Management Agreement, Defendants agreed that CAMI would receive 20% of all revenue streams generated by the foregoing activities. Specifically, the parties agreed that CAMI would receive 20% from all engagements or contracts secured on behalf of Defendants during the term of the Agreement. The parties further agreed that the Agreement could be terminated at any time by either CAMI or Defendants.

19.     Consistent with industry custom and practice, the parties further agreed that in the event either party terminated the Worldwide Management Agreement, Defendants would pay CAMI (a) the balance of any amounts owed to CAMI in connection with royalties earned by Defendants from albums released while under management by CAMI; and  (b) 20% of all fixed amounts to be received by Defendants pursuant to any contracts negotiated and secured by CAMI on Defendants' behalf during the term of the Worldwide Management Agreement.

20.     Beginning October 2022, CAMI committed significant time, effort and expense to perform its duties under the Worldwide Management Agreement. Among other things, CAMI and Vibberts:

a.  Created a brand partnership with Sony 360, resulting in a $10,000 payment to Lawson;

b.  Developed a workshop offering for various venues showcasing Lawson;

c.  Produced a showcase at the Association of Performing Arts Professionals (APAP) conference, hosted at Universal Music offices, which resulted in bookings in multiple U.S. cities;

d.  Oversaw European tour booked with The Earth Agency pursuant to which CAMI received 5% of 20% total commissions;

e.  Formed Y7 Yoga partnership and filmed yoga class for International Day of Yoga;

f.  Participated in Universal Music & Health Summit, which resulted in a partnership with Thrive Global (Arianna Huffington);

g.   Entered partnership with Endel app (music for sleep/wellbeing);

h.   Managed U.S. tour including dates in Mesa, Malibu, Ogden, and Brevard;

i.   Produced wellness events with Amazon and Nike for global audiences;

j.   Facilitated podcast revenue partnership with UTA and distribution agreement with QCODE;

k.   Released album "Where We Are" which was performed at Ladbroke Hall and Wilderness Festival in UK;

l.   Engaged Grammy strategist Sarah Weinstein Dennison;

m.   Produced MusiCares event broadcast to Recording Academy members; and

n.   Led promotional tour in Australia, featured at SXSW (South By Southwest) Sydney.

21.    For many of the foregoing managerial activity, (other than tour dates booked by CAMI), CAMI was not compensated. As is industry custom and practice, CAMI relies on fixed revenue streams generated from contracts it negotiates to compensate it for the overall management services it provides to artists.

### CAMI Secures an Amendment to the Recording Agreement between Lawson and Universal Music Group

22.    Most significant, as part of its management services, CAMI and Vibberts interfaced with Universal Music Classics, a division of Universal Music Group ("UMG") to negotiate and secure an amendment to an exclusive recording agreement between Chad Lawson Music LLC and UMG dated September 6, 2019. From February 2023 to July 2023 Vibberts expended considerable time and resources to negotiate and finalize the amendment, which was memorialized in an Exclusive Recording Agreement dated July 1, 2023 (the "UMG-Lawson Amendment").

23.    The UMG-Lawson Amendment committed Defendants to deliver to UMG what were termed the "Third Piano Commitment Album," the "Fourth Piano Commitment Album" and the "Fifth Piano Commitment Album." The UMG-Lawson Amendment set forth the specific amount UMG committed to pay for each respective album, termed "Recording Funds." The Recording Funds were divided into a 50% advance and a second payment of 50% upon Defendants' delivery of each album.

24.    The Third Piano Commitment Album, titled "Where We Are," was released on July 19, 2024, while Lawson was under management by CAMI. The UMG-Lawson Amendment committed UMG to pay Chad Lawson Music LLC a total fixed fee of $350,000.00 for the album. In accordance with the Worldwide Management Agreement, in September 2023 and February 2025 Chad Lawson Music LLC paid to CAMI 20% of the total received from UMG (after recoupable expenses to the label such as recording costs).

25.    The UMG-Lawson Amendment sets forth a total fixed fee of $425,000.00 to be paid by UMG to Chad Lawson Music LLC for the Fourth Piano Commitment Album. Pursuant to the Worldwide Management Agreement, Defendants are required to pay CAMI 20% of such amount, i.e., $85,000.00.

26.    The UMG-Lawson Amendment sets forth a total fixed fee of $500,000.00 to be paid by UMG to Chad Lawson Music LLC for the Fifth Piano Commitment Album. Pursuant to the Worldwide Management Agreement, Defendants are required to pay CAMI 20% of such amount, i.e., $100,000.00.

27.    It was understood by Defendants that CAMI earned its entitlement to commissions on all three Piano Commitment Albums by virtue of its negotiation of the UMG-Lawson Amendment, and that such commissions would be payable to CAMI at the time payments from

UMG were received by Chad Lawson Music LLC, whether such payments occurred before or after termination of the Worldwide Management Agreement.

28.     The dollar amount of CAMI's 20% commissions was fixed and earned during the term of the Worldwide Management Agreement insofar as UMG was and is obligated to pay fixed amounts to Chad Lawson Music, LLC for each album.

29.     The UMG-Lawson Amendment also provided for payment of royalties to Chad Lawson Music LLC in connection with the release and streaming of the Third Piano Commitment Album, "Where We Are."

30.     Defendants have acknowledged that $39,728.29 in commissions is owed to CAMI in connection with such royalties, which were received by Defendants during the term of the Worldwide Management Agreement.

31.     According to Defendants' legal counsel, Chad Larson personally approved the royalty commission amount owed to CAMI but refuses to pay it unless CAMI executes a Release of any claims relating to the Fourth and Fifth Piano Commitment Albums.

32.     On February 10, 2025, Chad Larson formally terminated the oral Worldwide Management Agreement and stated to Theresa Vibberts that "You will be paid for all the work you have done."

33.     Notwithstanding Chad Larson's commitment, CAMI has received no part of the $39,728.29 in commissions acknowledged to be owed, and no assurance that Defendants intend to honor CAMI's entitlement to its 20% of the fixed fees to be paid by UMG in connection with the Fourth and Fifth Piano Commitment Albums.

## FIRST CAUSE OF ACTION

### (Declaratory Judgement)

34.     Plaintiff hereby incorporates by reference each and every paragraph above as though set forth fully herein.

35.     Plaintiff seeks a declaratory judgement pursuant to the United States Declaratory Judgement Act, 28 U.S.C. § 2201 setting forth the respective rights and obligations of the parties under the oral Worldwide Management Agreement.

36.     Specifically, a bona fide justiciable and substantial controversy exists between the parties regarding Defendants' prospective obligation to pay CAMI 20% of the fixed payments to be received by Defendants pursuant to the UMG-Lawson Amendment in connection with the recording and delivery of the Fourth and Fifth Piano Commitment Albums.

37.     A judgement would serve a useful purpose in clarifying or settling these legal issues and would finalize the controversy and offer relief from uncertainty.

38.     Accordingly, CAMI seeks issuance of a declaration by the Court that, pursuant to the parties' oral Worldwide Management Agreement, Defendants must pay CAMI 20% on any fixed payments received by Defendants pursuant to the UMG-Lawson Amendment in connection with Defendants' recording and delivery of the Fourth and Fifth Piano Commitment Albums.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

39.     Plaintiff hereby incorporates by reference each and every paragraph above as though set forth fully herein.

40.     The oral Worldwide Management Agreement is a valid and enforceable contract, and CAMI at all times performed its obligations thereunder. In addition to the express terms of the

contract agreed to by the parties as heretofore alleged, the parties' course of conduct and industry custom and practice further evidence a valid and enforceable contract.

41.    Defendants breached the terms of the Worldwide Management Agreement by, among other things, failing to pay CAMI $39,728.29 in commissions acknowledged by Defendants to be owed in connection with royalties received by Defendants, and by otherwise repudiating their obligations thereunder.

42.    As a direct and proximate cause of said breaches, Plaintiff has been injured and damaged.

### THIRD CAUSE OF ACTION

### (Account Stated)

43.    Plaintiff hereby incorporates by reference each and every paragraph above as though set forth fully herein.

44.    On or about April 1, 2025 Defendants were presented with a Universal Music Group Accounting Statement for the semi-annual period ending December 31, 2024, which set forth a total commissionable amount owed to Defendants by UMG in the amount of $198,641.47. Such statements were presented by UMG to Defendants on a semi-annual basis and were used by Defendants to calculate the 20% commission owed to CAMI.

45.    Pursuant to the statement of account presented to Defendants, CAMI is owed $39,728.29 for the semi-annual period ending December 31, 2024.

46.    Defendants expressly agreed to the correctness of the account and committed to make the $39,728.29 payment to CAMI.

47.    Notwithstanding Defendants' acceptance of the account, as well as other correspondence from Plaintiff expressly stating the amounts owed, no payment has been forthcoming.

48.     Based on the account stated, CAMI is owed $39,728.29 for the semi-annual period ending December 31, 2024.

## FOURTH CAUSE OF ACTION

### (Promissory Estoppel)

49.     Plaintiff hereby incorporates by reference each and every paragraph above as though set forth fully herein.

50.     In the alternative, if there was no enforceable contract at law between CAMI and Defendants, CAMI states that in or about October 2022 Defendants clearly and unambiguously promised that CAMI would be paid 20% of all fixed revenues received from engagements or contracts secured on behalf of Defendants as a result of CAMI's talent management services.

51.     In reliance on Defendants' promises, CAMI provided talent management services to Defendants from October 2022 to February 10, 2025. Included in such services was the negotiation and finalization of an amendment to an exclusive recording agreement between Chad Lawson Music LLC and UMG dated September 6, 2019 (as amended November 19, 2019). The amendment was memorialized in an Exclusive Recording Agreement dated as of July 1, 2023.

52.     From February 2023 to July 2023 extensive time and resources were expended by CAMI and Vibberts to negotiate and finalize the amendment, and to get the best deal possible for Defendants.

53.     CAMI's reliance on Defendants' promises was reasonable, expected and foreseeable.

54.     CAMI relied on Defendants' promises to its detriment because Defendants have refused to pay 20% of the recording and delivery fees it will receive from UMG in connection with the Fourth and Fifth Piano albums, as well as the balance of fees owed as of year-end 2024.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment/Qutum Meruit)

55.    Plaintiff hereby incorporates by reference each and every paragraph above as though set forth fully herein.

56.    If there was no contract at law between the parties, the facts and circumstances of the case and the intention of the parties as manifested by their conduct as set forth, supra, support the inference that an implied or quasi-contract existed.

57.    The parties had business dealings since at least August 2021 that establish a course of conduct which reasonably established that CAMI was entitled to be compensated at the rate of 20% of revenues generated by CAMI's efforts to, among other things, secure contractual commitments from record companies to pay fixed fees for Defendants' recording and delivery of album master tapes.

58.    From October 2022 to on or about February 10, 2025, CAMI and Vibberts performed management services on behalf of defendants in good faith and at its expense, including but not limited to, negotiating and finalizing an amendment to an exclusive recording agreement between Chad Lawson Music LLC and UMG dated September 6, 2019 (as amended November 19, 2019). The amendment was memorialized in an Exclusive Recording Agreement dated July 1, 2023.

59.    Defendants accepted the services rendered by CAMI and Vibberts, who successfully secured for Defendants, among other things, a commitment from UMG to purchase, at fixed prices, the Fourth and Fifth Piano Commitment Albums. Defendants were accordingly enriched by CAMI's services.

60.    There was an expectation that CAMI would be compensated for the services rendered, in accordance with industry standards.

61.    The reasonable value of the services rendered, in accordance with industry standards, was 20% of any amounts received or to be received by Defendants from UMG at the time of payment.

62.    It would be against equity and good conscience to permit Defendants to retain the value of what it received as a result of CAMI's efforts.

63.    Defendants' failure to pay CAMI the reasonable value for its services has unjustly enriched Defendants and damaged CAMI.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgement in its favor and grant the following relief:

1.    On the First Cause of Action, a declaratory order and judgement pursuant to United States Declaratory Judgement Act, 28 U.S.C. § 2201, construing the parties' Worldwide Management Agreement to require Defendants **to** pay CAMI 20% of the fixed payments to be received by Defendants, in connection with Defendants' recording and delivery of the Fourth and Fifth Piano Commitment Albums;

2.    On the Second Cause of Action, a judgement that Defendants breached the terms of the Worldwide Management Agreement and ordering Defendants to pay CAMI, among other things, $39,728.29 in commissions acknowledged by Defendants to be owed;

3.    On the Third Cause of Action, a judgement for payment of amounts owed to CAMI pursuant to the Worldwide Management Agreement on the alternative grounds of account stated;

13

4.      On the Fourth Cause of Action, a judgement enforcing Defendants' promise to pay CAMI, among other things, 20% of the recording and delivery fees Defendants will receive from UMG in connection with the Fourth and Fifth Piano albums, as well as the balance of fees owed as of year-end 2024;

5.      On the Fifth Cause of Action, a judgement for the  reasonable value of the services rendered by CAMI which, in accordance with industry standards, was 20% of any amounts received or to be received by Defendants from UMG at the time of payment for the Fourth and Fifth Piano Commitment Albums and $39,728.29 in commissions acknowledged by Defendants to be currently due and owing; and

6.      Such other and further relief as the Court deems just and proper.

**JURY DEMAND**:  Plaintiff hereby requests a jury trial.


Dated: July 23, 2025                              Respectfully Submitted,

                                                                KOSTYN BLINKEN, LLP

                                                                By: */s/ Kevin F. Kostyn, Esq.*

                                                                 KK1345


                                                                kk@kostynblinken.com
                                                                647 East 9th Street Suite 3
                                                                New York, New York 10009
                                                                212-254-2677

                                                                *Attorneys for Plaintiff*